# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-cv-80832-ALTMAN

**KAREEM ANDRE WILLIAMS**,

    *Plaintiff*,

*v.*

**DEPUTY HAAS**, *et al.*,

    *Defendants*.

_____/

## ORDER

Our Plaintiff, Kareem Andre Williams, has filed a civil-rights complaint under 42 U.S.C. § 1983. *See* Complaint [ECF No. 1]. As best we can tell, Williams—a pretrial detainee—sues seven Defendants—corrections officers employed by the Palm Beach County Sheriff's Office ("PBSO")—for violations of his Fourteenth Amendment rights. *See id.* at 1–4. Williams says that two Defendants used excessive force when they "hoisted [him] up and violently slammed [him] on the ground[.]" *Id.* ¶ 2 (cleaned up). After Williams was "shackled baref[oo]t in a wheelchair[,]" three other Defendants allegedly "place[d] [Williams] in an unclean cell"—"stripped naked"—"with feces and bodily fluids on the walls, ground, sink, and toilet." *Id.* ¶¶ 2, 5 (cleaned up). Williams seeks $800,000 for his "emotional distress," "internal and mental injuries[,]" and "embarrassment and humiliation[.]" *Id.* at 3–4. Williams also filed a motion for leave to proceed *in forma pauperis*. *See* IFP Motion [ECF No. 3]. After careful review, we **DISMISS** the Complaint *without prejudice* and **GRANT** Williams leave to file an amended complaint.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis

added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

The Federal Rules of Civil Procedure require that a well-pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Every pleading . . . must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In this Court, a civil-rights complaint submitted by a *pro se* prisoner "must be signed under penalty of perjury." S.D. FLA. L.R. 88.2; *see also* FED. R. CIV. P. 11(a) ("*Unless a rule or statute specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." (emphasis added)). Additionally, "complaints must substantially follow the form, if any, prescribed by the Court." S.D. FLA. L.R. 88.2(a).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Courts may dismiss a plaintiff's complaint for failure to comply with the Federal Rules, the Local Rules, or court orders. *See, e.g.*, *Brutus v. Int'l Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) ("The court may dismiss a claim if the plaintiff fails

2

to prosecute it or comply with a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). And *pro se* litigants are not exempt from procedural rules. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *see also Heard v. Nix*, 170 F. App'x 618, 619 (11th Cir. 2006) ("Although *pro se* complaints must be liberally construed, such complaints still must comply with the procedural rules governing the proper form of pleadings." (cleaned up)); S.D. FLA. L.R. 1.1 ("When used in these Local Rules, the word 'counsel' shall be construed to apply to a party if that party is proceeding pro se."). The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Inves., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## ANALYSIS

Williams's Complaint suffers from three defects. *First*, Williams didn't use the proper court-approved form for civil-rights actions filed by prisoners. *Second*, none of his allegations state a plausible claim for relief. *Third*, Williams's Complaint can't proceed to service until he corrects his IFP Motion. We'll address each defect in turn.

### I. The Form

For starters, the Complaint's form is all wrong. Williams's Complaint doesn't "substantially follow" the forms this Court has prescribed for civil-rights complaints filed by prisoners and, therefore, violates Local Rule 88.2. *Cf. Modeste v. Michael*, 2021 WL 633737, at *4 (S.D. Fla. Feb. 18,

3

2021) (Bloom, J.) (instructing the plaintiff to "file an amended complaint on the appropriate form"). We'll therefore instruct the Clerk to send Williams a copy of the correct § 1983 complaint form, and we caution Williams that, if he doesn't submit his amended complaint on the correct form, we'll dismiss this case without further notice. *See Phillips v. Florida*, 2018 WL 6980972, at *4 (N.D. Fla. Dec. 10, 2018) (Frank, Mag. J.) (noting that a "federal court may enforce willful violations of local rules by dismissing actions" where "the violation entails failure to use a court-approved form" (citations omitted)), *report and recommendation adopted*, 2019 WL 131844 (N.D. Fla. Jan. 8, 2019) (Rodgers, J.).

## II.   The Failure to State a Claim

Williams asserts claims against seven Defendants: Deputy Sheriff Haas, Deputy Sheriff Stevens, Deputy Sheriff Gaskin, Lieutenant Alfred, Sergeant Cooper, Sergeant K. Williams, and Deputy Sheriff Echos. After construing Williams's allegations liberally, we find that he's attempted to bring *five* claims against Deputy Sheriff Haas, Deputy Sheriff Stevens, Sergeant Williams, and Deputy Sheriff Gaskin under the Fourteenth Amendment[1]—*two* of which concern Haas's and Stevens's purportedly "excessive use of force," Compl. ¶ 7, and *three* of which pertain to Sergeant Williams, Deputy Gaskin, and Deputy Stevens's deliberate indifference in "plac[ing] [Williams] in an unclean" and "dirty, fly-infested cell," *id.* ¶ 5 (cleaned up). As we'll explain, though, Williams falls short of stating a plausible claim for relief against these four Defendants, and his remaining claims are too conclusory to survive screening.

### a. Excessive Force

---

[1] Williams is a pretrial detainee, so his excessive-force and deliberate-indifference claims fall under the rubric of the Fourteenth Amendment. *See Crocker v. Beatty*, 995 F.3d 1232, 1247 (11th Cir. 2021) ("[T]he Fourteenth Amendment has been interpreted to protect 'pretrial detainees' from excessive force."); *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) ("The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons.").

4

We'll start with Williams's excessive-force claims against Deputy Sheriffs Haas and Stevens, which are insufficiently pled. Williams says that, when he was ordered "removed from [his] dormitory[,] . . . Haas restrained and escorted" him out "while Stevens retrieved [his] property." Compl. ¶ 1 (cleaned up). At one point, Haas "struck" the back of Williams's head, and, despite being "ordered . . . to stop[,]" Haas (and Stevens) "hoisted [Williams] up and violently slammed [him] on the ground[.]" *Id.* ¶ 2 (cleaned up). Williams claims that he "suffered internal and mental injuries," "embarrassment," and "humiliation." *Id.* ¶ 6.

To assert a Fourteenth Amendment excessive-force claim, a pretrial detainee (like Williams) "needn't prove an officer's subjective intent to harm but instead need show only that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Courts apply six non-exhaustive factors (known as the "*Kingsley* factors") to assess the objective reasonableness of a corrections officer's use of force: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1178 (11th Cir. 2020) (quoting *Kingsley*, 576 U.S. at 397).

Applying the *Kingsley* factors here, we don't see how Haas's and Stevens's use of force was objectively unreasonable. *First*, Williams doesn't tell us what precipitated the officers' use of force—so we cannot say whether that force was necessary or appropriate in the circumstances. *Second*, Williams says that he of walked away with nonspecific "internal" injuries, "humiliation," and "emotional distress," Compl. at 3–4, which "suggests that the force used was pretty minimal[,]" *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021); *see also ibid.* ("Considering all the *Kingsley* factors, it

5

seems most important that there was very little 'force' used and essentially no harm done."). *Third*, Williams does allege that the Defendants "hoisted [him] up and violently slammed [him] on the ground" despite being "ordered . . . to stop." Compl. ¶ 2 (cleaned up). But he gives us nothing on the *fourth*, *fifth*, and *sixth* factors. His allegations thus fall well short of showing that the Defendants' use of force was objectively unreasonable under the *Kingsley* factors. We therefore **DISMISS** his excessive-force claims against Haas and Stevens.

### b. Deliberate Indifference

Williams hasn't stated a deliberate-indifference claim against Sergeant Williams, Deputy Sheriff Gaskin, and Deputy Sheriff Stevens, either. Williams alleges that, after he "declared a psychiatric emergency due to distress[,]" Sergeant Williams said to him: "I am going to put [you] in a cell if you fail to do anything I tell you I am going to hospitalize you." Compl. ¶ 4. Later, Sergeant Williams, Deputy Sheriff Gaskin, and Deputy Sheriff Stevens supposedly "place[d] [Williams] in an unclean cell with feces and bodily fluids on the wall, ground, sink and toilet[,]" leaving him there "stripped naked in the dirty, fly-infested cell." *Id.* ¶ 5 (cleaned up). The next day, Williams was "take[n] . . . off suicide status" and "prescribe[d] Remron for depression." *Ibid.* (cleaned up).

To state a valid unlawful-conditions claim, a pretrial detainee must satisfy two elements. *First*, the detainee must allege that, objectively, the conditions of his confinement are "sufficiently serious," which generally means that "[o]nly a deprivation which denies 'the minimal civilized measure of life's necessities' . . . is grave enough" to violate the Constitution. *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hamlet v. Martin Corr. Inst.*, No. 21-11937, 2022 WL 16827438, at *3 (11th Cir. Nov. 9, 2022) ("Extreme deprivations are required to make out a conditions of confinement claim." (cleaned up)). *Second*, the detainee must show that jail officials "had a sufficiently culpable state of mind"—in other words, that they acted with "subjective

deliberate indifference to the substantial risk of serious harm caused by such conditions[.]" *Thomas v. Bryant*, 614 F.3d 1288, 1304, 1307 (11th Cir. 2010).

Here, all we know is that Williams was left naked in a cell with flies and feces on the "wall, ground, sink, and toilet"—for *one* day. Compl. ¶ 5. That's *probably* enough to satisfy the first element of Williams's unlawful-conditions claim. *See Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991) (holding that being held "in a cold cell with no clothes except undershorts and with a plastic-covered mattress without bedding," especially when combined with "filth on the cell's floor and walls" and a "lack of soap," could constitute cruel and unusual punishment); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (finding that the plaintiff's "thirty-six hour[ ]" detention with "lack of access to working toilets," during which he was "expos[ed] to other inmates' urine and feces via the standing water" could constitute sufficiently serious conditions); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("[C]ourts have been especially cautious about condoning conditions that include an inmate's proximity to human waste." (listing cases)).

Even so, Williams falters at the second prong of the deliberate-indifference test. He says *nothing* about whether Sergeant Williams, Deputy Gaskin, and Deputy Stevens *knew* about his cell's conditions, whether the conditions were *obvious*, or whether the Defendants were responsible for maintaining the conditions in his cell. Without these details, Williams cannot show that these Defendants were subjectively indifferent to the substantial risk of harm the dirty cell posed to Williams. *See Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (requiring a plaintiff to show that "the defendant was actually, subjectively aware that his *own conduct* caused a substantial risk of serious harm to the plaintiff" (emphasis added)); *Townsend v. Fuchs*, 522 F.3d 765, 775 (7th Cir. 2008) ("[B]ecause Townsend points to no evidence showing that Farrey either *observed* Townsend's cell personally or *was informed* of his specific situation, he would be unable show that she acted with

7

deliberate indifference by failing to remedy the conditions in his cell." (emphases added & citations omitted)).

In drafting his amended complaint, Williams must plead *specific* facts under *both* prongs of the deliberate-indifference test if he hopes to proceed on his claims against Sergeant Williams, Deputy Gaskin, and Deputy Stevens. Since he hasn't done that here, we **DISMISS** his deliberate-indifference claim without prejudice.

### c. Williams's Remaining Claims

That leaves us with Williams's claims against Deputy Echos, Lieutenant Alfred, and Sergeant Cooper. The problem here is that we're not sure what Williams is suing these Defendants about because he doesn't tell us. Williams's *only* allegation about Deputy Echos is that Echos "hung up [his] phone call and radioed a signal to have [him] removed from inside South 6-A dormitory" before Haas and Stevens attacked him. Compl. ¶ 1 (cleaned up). That's woefully insufficient to state a viable claim against this Defendant.

Williams's claims against Lieutenant Alfred and Sergeant Cooper don't fare much better. Williams claims that, after he threatened "to sue," Lieutenant Alfred yelled: "He kicked me!" and "ordered [Deputy Sheriff] Gaskin to 'tase that motherf---er!'"—an order with which Gaskin "did not comply[.]" Compl. ¶ 3. Meanwhile, Sergeant Cooper "beg[an] to photograph and record [Williams's] person" while "taunting" him by asking: "Why you trying to hurt yourself?" *Ibid.* At best, Williams seems to be accusing Alfred and Cooper of verbal harassment. But "verbal taunts . . . however distressing" don't violate a prisoner's constitutional rights. *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (cleaned up); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (recognizing that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual

punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").[2] And Williams doesn't allege that Alfred and Cooper ever *physically* hurt him. *See generally* Compl. Since Williams hasn't stated any plausible constitutional claim against Echos, Alfred, or Cooper, we **DISMISS** the claims against these Defendants too.

### III.   The IFP Motion

One last thing: Before he can proceed with an amended complaint, Williams must fix his IFP Motion. Prisoners "seeking to bring a civil action . . . without prepayment of fees or security therefor" are responsible for filing an affidavit and "a certified copy of the trust fund account statement (or institutional equivalent) . . . for the 6-month period immediately preceding the filing of the complaint . . . from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C § 1915(a)(1)–(2). Although Williams attached the required affidavit to his IFP Motion, his certified account statement is deficient. Williams filed his Complaint on June 23, 2025,[3] so his statement *should* reflect his financial activity from January 23, 2025, to June 23, 2025. But, since his "statement period" only spans from September 2, 2024, to April 2, 2025, we "can't determine if [Williams] is eligible to

---

[2] It's true that, in rare circumstances, a correctional officer's verbal threats *could* make him liable under the Eighth (or Fourteenth) Amendment. *See Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360–61 (D.C. Cir. 1998) ("Although a verbal threat standing alone is generally inadequate to state a constitutional claim, such a threat could violate the Eighth Amendment if the resulting harm were *sufficiently severe*." (emphasis added)); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (stating that "sexual harassment or abuse of an inmate by a corrections officer . . . may well result in severe physical and psychological harm," which may "constitute the unnecessary and wanton infliction of pain forbidden by the Eighth Amendment" (citations and quotation marks omitted)); *In re Eric Watkins Litig.*, 829 F. App'x 428, 431 (11th Cir. 2020) (concluding that a pretrial detainee "presented an 'arguable' constitutional claim" where the plaintiff alleged that a correctional officer "angrily and repeatedly threatened to rape him" and "caused him *severe mental distress*" (emphasis added)). But Williams doesn't come close to establishing the kind of severe physical or psychological harm that's required to state a viable claim here.

[3] Under the prison-mailbox rule, we'll assume that Williams filed his Complaint on June 23, 2025—the day he signed it. *See* Compl. at 5; *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."); *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) ("Absent evidence to the contrary, we assume that a prisoner delivered a filing to prison authorities on the date that he signed it.").

proceed IFP." *Butts v. City of Tallahassee*, 2023 WL 6800480, at *4 (N.D. Fla. Sept. 18, 2023) (Fitzpatrick, Mag. J.), *report and recommendation adopted*, 2023 WL 6795292 (N.D. Fla. Oct. 13, 2023) (Walker, C.J.); *see also* IFP Motion at 3. So, if Williams files his amended complaint, he must *either* pay the Clerk's filing fee of $405.00 *or* file a legally sufficient IFP Motion. If he doesn't, we'll dismiss this case for failure to comply with our orders. *See Barnes v. Fed. Commc'ns Comm'n*, 824 F. App'x 745, 749 (11th Cir. 2020) ("[T]he district court did not abuse its discretion when it dismissed Barnes's amended complaint for failure to timely comply with its order to file [an] IFP Motion." (cleaned up)).

\*   \*   \*

We therefore **ORDER AND ADJUDGE** as follows:

1. By **August 6, 2025**, the Plaintiff must file an amended complaint correcting the deficiencies identified in this Order. The amended complaint must be no longer than 20 double-spaced pages, must be signed under the penalty of perjury, and must contain a short and plain statement of the Plaintiff's claim for relief, a basis for federal jurisdiction, and a demand for judgment. The amended complaint must also include a separate paragraph for each Defendant, explaining what that Defendant did wrong, and it must present all allegations in numbered paragraphs. The Clerk is **DIRECTED** to attach a copy of this Court's form titled "Complaint for Violation of Civil Rights (Prisoner)."

2. The amended complaint must be labeled "Amended Complaint" and must show the case number referenced above, so that it will be filed in this case. The Court will only consider the claims raised in the amended complaint, which will be the operative pleading for the remainder of this case. The Plaintiff may not incorporate by reference past claims.

3. The Plaintiff's failure to file the amended complaint on time and in compliance with this Order shall result in dismissal of this case for failure to prosecute or for failure to comply with court orders. *See* FED. R. CIV. P. 41(b).

4. The Plaintiff's IFP Motion [ECF No. 3] is **DENIED** as legally insufficient. By **August 6, 2025**, the Plaintiff shall *either* pay the Clerk's filing fee of $405.00 or, in the alternative, file a legally sufficient IFP Motion. If the filing fee is paid, the check or money order must bear the case number so the fee will be docketed in the correct case. If he files an IFP motion, he must include a supporting financial affidavit *and* his six-month account statement for the period immediately preceding the filing of this case, in accordance with 28 U.S.C. § 1915. The Clerk is **DIRECTED** to provide the Plaintiff with a copy of our "Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)." The Plaintiff's failure to resolve the filing-fee issue on time and in compliance with this Order will result in dismissal of this case. *See* FED. R. CIV. P. 41(b).

5. The Clerk's Office shall administratively **CLOSE** this case. If the Plaintiff's amended complaint survives screening, the Court will reopen this case once all the Defendants have been served.

**DONE AND ORDERED** in the Southern District of Florida on July 9, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  Kareem Andre Williams, *pro se*